IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**PRESTON BURKE KELLUM**                                                                      **PLAINTIFF**

**V.**                                         **CIVIL ACTION NO. 1:19-CV-188-DAS**

**COMMISSIONER OF SOCIAL SECURITY**                                  **DEFENDANT**

## MEMORANDUM OPINION

This case makes its second appearance before this court. The plaintiff initially applied for benefits on August 20, 2012. The administrative law judge (ALJ) originally found that Kellum was not disabled and his drug and alcohol abuse (DAA) was not a severe impairment. In the first appeal this court remanded the case finding that the ALJ did not adequately explain why she discounted the opinions of Dr. Hardy; provided no analysis of how she considered the opinions of a treating therapist; and failed to mention the testimony of Kellum's mother.

While the case was on appeal to this court, Kellum underwent substantial additional treatment, including in-patient treatment for depression and drug and alcohol dependency. After a second hearing and considering the new treatment records, the ALJ again denied the claim. This time the ALJ found that considering all Kellum's impairments, including his drug and alcohol abuse, he was disabled. The ALJ further found if Kellum stopped abusing drugs and alcohol he would be able to work. Because his drug and alcohol abuse were material, contributing factors to his disability, Kellum was not entitled to benefits.

The plaintiff argues that the ALJ erred in denying the plaintiff's request for appointment of a medical expert; in finding that Kellum's drug and alcohol abuse materially contributed to his disability; and in failing to explain the inconsistent findings between the two decisions.

The Commissioner counters that, on a voluminous record with multiple experts' opinions, the ALJ did not err in declining to appoint a medical expert; that the decision is supported by substantial evidence; and that the ALJ was not bound by the vacated 2014 decision, nor obliged to explain why parts of the decision were different.

## **STANDARD OF REVIEW**

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405 (g.); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the

Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. The court must however, despite its limited role, "scrutinize the record in its entirety "to determine the reasonableness of the decision ... and whether substantial evidence exists to support it." *Randall v. Sullivan,* 956 F.2d 105, 109 (%the Cir. 1992). If the Commissioner's decision is supported by the evidence, then it is a conclusive and must be upheld. *Perales*, 402 U.S. at 390.

## THE ALJ'S DECISION

The ALJ issued her decision finding that the plaintiff was not entitled to SSI benefits because his substance abuse was a material, contributing factor to his disability. At Step Two, the ALJ found that Kellum had four severe impairments: anxiety, depression, an alcohol abuse disorder, and a cannabis abuse disorder. In evaluating the "B" criteria, including his substance abuse, the ALJ found Kellum had moderate restrictions in understanding, remembering, and applying information, moderate difficulties in interacting with others, marked limitations in concentrating, persisting, or maintaining pace, and moderate limitations in adapting or managing himself. At Step Three, the ALJ determined none of Kellum's conditions met any Listing of Impairments.

As required by Social Security Ruling 13-2p, 2013 WL 1221979 (Mar. 22, 2013), the ALJ did an initial assessment of Kellum's residual functional capacity (RFC), incorporating all impairments, including limitations caused by his substance abuse. The ALJ addressed the non-expert evidence noting that Kellum's mother and sister said he could not follow extensive directions but could follow simple, limited instructions. Though he had lived primarily with family, there was no indication that he lacked the ability to understand and apply basic facts and

common knowledge in his everyday life. While he had some difficulty in social activities, he spent time with family and friends and went out in public. His mood was improved when he was on medications. He had a good rapport with his providers. Kellum and family concurred he made better decisions when he was medicated and sober. The ALJ found that even considering his DAA, Kellum was able to perform a greater range of work-related activities than he alleged.

The ALJ discussed the plethora of medical opinions in the file including the consultative examinations by Dr. Michael Whelan, Dr. James Lane, Ph.D., Margaret McDonald, a treating mental health therapist, Dr. Robert Hardy, his treating psychiatrist, Dr. Philip Drumheller, Ph.D., a consultative examiner, and the report of the DDS consultant. The ALJ explained why she largely rejected the opinions of Dr. Hardy and McDonald and adopted parts of the other experts' opinions in deciding the initial RFC.

The ALJ found that Kellum could perform a full range of work at all exertional levels but was limited to performing routine, repetitive work involving simple tasks and decisions. Kellum could adjust to occasional change in the workplace, and was capable of occasional interaction with coworkers and supervisors but not the public. He could not do production-pace work. Kellum could not sustain attention and concentration for two hours at a time or behave in an emotionally stable manner. He would miss three days of work per month. This RFC precluded any work.

The ALJ then assessed how well Kellum should be able to function if he were sober. The ALJ first found Kellum's other impairments would still be severe. In considering his B criteria, without his polysubstance abuse, Kellum would have mild restrictions in understanding, remembering, and applying information, as opposed to moderate restrictions with DAA. He would have moderate difficulties in interacting with others, unchanged from the initial B criteria

assessment, and moderate limitations in concentration, persistence, and pace, improving from the marked limitations with DAA. His limitations in adapting and managing himself would improve from moderate to mild limitations with sustained abstinence. Kellum's second RFC was the same as before except the ALJ found that Kellum, if sober, could maintain attention and concentration for two hours at a time; could behave in an emotionally stable manner; and could maintain the necessary attendance. With the assistance of vocational expert testimony, the ALJ found Kellum could perform his past relevant work as a construction worker. Because Kellum would not be disabled but for his DAA, the ALJ denied the claim for benefits.

## ANALYSIS

In 1996, Congress amended the definition of disability under the Social Security Act concerning claimants engaging in drug or alcohol abuse in the Contract with America Advancement Act, Pub. L. No. 104-121 § 105, 110 Stat. 847, 852-54. The Act requires that a determination be made about whether a claimant's drug or alcohol abuse has been a material factor contributing to their disability. If the substance abuse is a material contributing factor, the claimant will not qualify for benefits. The regulations implementing the Act are 20 C.F.R. §§404.1535 and 416.935. The key factor in making the materiality determination is "whether we would still find you disabled if you stop using drugs or alcohol." 20 C.F.R. § 416.935 (b). The Ninth Circuit has described the necessary regulatory process as follows:

> An ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935. If the ALJ finds the claimant is disabled and there is medical evidence of his or her drug addiction or alcoholism, then the ALJ should proceed under §§ 404.1535 or 416.935 to determine if the claimant would still be found disabled if he or she stopped using alcohol or drugs. 20 C.F.R. §§ 404.1535, 416.935

*Bustamante v. Massanari*, 262 F.3d 949, 954–55 (9th Cir. 2001) (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213- 14 (10th Cir. 2001)). The burden of proving that substance abuse is not a material contributing factor is on the claimant, and the ALJ followed this procedure in reaching her decision.

### 1. MEDICAL EXPERT

The plaintiff argued in his brief the ALJ erred in denying his request that a medical expert review the records and give an opinion about the materiality of his substance abuse. While conceding at oral argument the ALJ is prohibited from seeking an opinion about the materiality issue, Social Security Ruling SSR 13-2p, the plaintiff continued to argue that the ALJ needed the assistance of a medical expert to make the decision. The ALJ noted the SSR's prohibition and found no need for the assistance of a medical expert.

Because there were already multiple expert opinions in this case and the plaintiff has not shown how the failure to appoint a medical expert has prejudiced him, the court finds no error. The ALJ had voluminous treatment records from Dr. Hardy and Virginia McDonald, a counselor, and other providers. There were also records from multiple hospitalizations between early 2012 and the end of 2017. While both Hardy and McDonald issued opinions finding Kellum was severely restricted because of his mental conditions and downplaying the role of his drug and alcohol problems, the ALJ was entitled to rely on the reports and opinions of consulting examiners and DDS psychologist who found lesser restrictions resulting from his depression and anxiety and greater concern for his long-term prognosis due to his drug and alcohol problems. The court finds the ALJ did not abuse her discretion in refusing to add the testimony and opinions of a medical expert to the already voluminous records.

### 2. SUBSTANTIAL EVIDENCE

As part of the first and second assignments, the plaintiff argues in a variety of ways, the decision is not supported by substantial evidence. He argues both that the ALJ erred in finding that Kellum had a substance abuse problem at all (particularly between the date of onset and 2016) and that the ALJ erred in failing to consider whether his substance abuse problems were irreversible. However, the court finds the plaintiff has waived the second argument.[1] The plaintiff also argues that the determinations of his residual functional capacity is not supported by substantial evidence. He argues he is disabled because of his depression and anxiety regardless of any substance abuse.

### A. The Drug and Alcohol Abuse Assessment

Kellum argues his drug and alcohol abuse was not sufficiently established before 2016. The court finds evidence supports the ALJ's finding that Kellum had a substance abuse problem. Social Security Ruling 13-2p addresses the evidence to establish a DAA diagnosis and in this case the diagnosis was made years before the alleged date of onset. Social Security Ruling 13-02p does as the plaintiff points out accept "evidence of multiple emergency department admissions due to the effects of substances" as satisfactory proof of substance abuse. The plaintiff also points out that there is only one substance-abuse related emergency room visit, in 2015, that falls between the amended onset date and 2016. But the court notes that the onset date was amended at second hearing to move the date to just behind his June 2012 one-car accident when his blood alcohol registered .23 and he tested positive for marijuana and cocaine. Manipulating the onset date does not render this accident or the positive drug tests irrelevant.

---

[1] The Commissioner pointed out in its brief that the reference to irreversibility refers to a condition other than substance abuse, SSR-13-02p, and the plaintiff did not argue the point at oral argument.

The record amply demonstrates that Kellum had a problem with substance abuse which was diagnosed long before his alleged onset and continued during the relevant time-period. Kellum reported drinking problems going back to his teen years, a much-earlier five-year stint in prison for a felony DUI, multiple public drunk arrests, and drug and alcohol treatments going back years. That there are relatively few blood tests for drugs and alcohol between 2012 and 2016 does not undermine the long-standing diagnosis. Furthermore, SSR 13-02p recognizes current treatment for substance abuse is adequate proof of a substance abuse disorder. Even Dr. Hardy, on whose opinions Kellum relies in this appeal, diagnosed Kellum with alcohol dependency. The ALJ did not err in finding Kellum had a drug and alcohol abuse problem.

### B. The Materiality Determination

What is less clear from the administrative record is whether and when Kellum may have been sober during the relevant time-period. There are periods of time when he was clearly abusing drugs and alcohol and other times when he claimed to be sober. The plaintiff argues as if the ALJ had to accept Kellum's reports of his sobriety as undisputed in deciding his claim. Unfortunately for the plaintiff the ALJ expressly found that Kellum's reports were not reliable, and he was not sober during much of his treatment with Hardy and McDonald. Complicating the ALJ's decision-making is the fact that Kellum was only sporadically compliant with medications for his depression and anxiety. Deciding the impact of his substance abuse problems vis-à-vis his other impairments was not a simple task. The court finds that the record shows conflicting evidence and that the judge resolved those conflicts against the plaintiff.

In looking to determine the evidentiary support for the ALJ's decision, the court has considered three questions. First, to what extent does the record show that Kellum's reports of sobriety are not reliable? Second, the court looked to see what evidence exists in the record to

support the ALJ's determination that a sober Kellum would function well enough to be able to work. And third, the court has reviewed the opinions and reports of the experts to determine if they support the two RFC assessments by the ALJ.

### i. Kellum's Reports of Drug and Alcohol Use

Turning first to the question of Kellum's reports of sobriety, it is apparent that his reports are not always reliable. In January, 2013, when Kellum was seen by Dr. Lane, he reported his history of substance abuse but claimed he stopped using drugs and alcohol three years earlier. This appointment was six months after the accident in June 2016 when he was extremely intoxicated. In March 2016, Kellum was seen for a neurological evaluation. He reported quitting alcohol completely, then admitted in the same visit to drinking the preceding weekend. In September, 2016, Kellum told Dr. Drumheller he was not drinking at all. His mother told Drumheller, he still drank some beer but could not say how much he was drinking. In November of 2016, he denied having a substance abuse history when admitted pursuant to a court commitment at Alliance Health Center. He and his family reported during the same commitment at East Mississippi State Hospital that he was drinking and using drugs before being committed. There is clear cause for finding that Kellum's reports were less than compelling evidence.

### ii. Impact of Substance Abuse

Turning to the question of evidence to support finding Kellum would function well enough to work if sober, the ALJ noted that he and his family members thought he made better choices when he was not drinking. There are also numerous references in his treatment records to times when Kellum had normal or near normal mental findings. For example, in March 2012, Hardy noted he was cheerful with normal speech, well-modulated affect, logical thought, good judgment, no psychotic symptoms or suicidal or homicidal ideation. A year later, Hardy noted

9

Kellum was doing better, sleeping better, less anxious and on no prescription medicines. He had had no crying spells and was cooperative with a well-modulated affect.

In March of 2013, Hardy noted Kellum's medical compliance was in doubt, but he denied drug and alcohol use. Kellum reported sleeping well and seeing friends for fun. His affect was blunted but the balance of the exam was normal.

Throughout 2014 Kellum was a no-show for numerous appointments with McDonald. Dr. Hardy wrote he was not medically compliant. Nevertheless, his records show he was sleeping well, spending time with friends, alert, logical and showing good judgment, though he had a blunted affect. He had few complaints of depressive symptoms.

In 2015 Kellum was treated after being hit in the head with a baseball bat when his blood alcohol tested at .26. A month later he tested positive for cannabinoids, opiates, cocaine, amphetamines, tricyclic antidepressants, barbiturates, methadone, and phencyclidine. Six months later, he complained to Dr. Vowell about depression, anxiety, and pain.

In 2016, Kellum's condition appears to worsen. In January, 2016, he was assessed at the Eupora Clinic with "a lot of obvious evidence of drug dependency and alcohol abuse" plus chronic anxiety, and probable underlying depression. A May 2016 therapy note found he was off his medications, but his appearance was appropriate; his motor activity fidgety; his thinking organized and his attention and concentration average. That month he saw Dr. Hardy again after an eighteen-month hiatus. He was not taking his medications, but other than a blunted affect, Hardy's findings were normal.

By July 2016, a therapy progress note showed appropriate appearance and affect but an angry demeanor. Still his thinking was organized and concentration was average. In other July,

10

2016, counseling notes, a noncompliant Kellum was angry but cooperative with organized thinking and average concentration. He complained about sleep and appetite problems.

In August 2016, he was reporting depression and anxiety at the Eupora Clinic, though denying stress, memory loss, confusion, or hallucinations. The same month Hardy found Kellum, though still noncompliant, had goal oriented and logical thought, with fair insight and judgment. Kellum reported problems with short-term memory. In September, he reported he was doing better and in a good mood.

Unfortunately, by November 8, 2016, he was committed to East Mississippi State Hospital (EMSH) after altercations and threats involving his girlfriend and family. He stayed at Alliance Health in Meridian, Mississippi until December 5, 2016 when a bed became available at EMSH. He continued treatment at the state hospital until January 5, 2017.

His January 2017 outpatient notes found Kellum was doing better. He had normal motor activity, cooperative behavior, organized thinking, and average concentration. He was making moderate progress with no depressive symptoms, though exhibiting some medication-seeking behavior. In May he was still doing well, with appropriate dress, affect and demeanor, average motor activity, and good eye contact. His thinking was organized and his concentration average. He did not report sleep or appetite problems, and his medications were helping him. He was medically compliant and not letting daily stress overwhelm him.

In November of 2017 he relapsed again, resulting in a week-long hospitalization at Baptist Memorial Hospital. He was suicidal and had been charged for another DUI. He was diagnosed with severe depression and substance abuse issues. He "tolerated detox without any difficulty."  By discharge his mood was improved and he was free of any substance.

11

In fact, the history of Kellum's emergency room visits and hospitalizations is compelling evidence of the impact of his substance abuse problems versus his mental health issues. In each case, there is evidence of active drug and alcohol abuse. Shortly before the amended date of onset, Kellum was injured in a car wreck while severely intoxicated, resulting in several days hospitalization. His next hospital visit was an ER visit for a head injury sustained in a drunken brawl. When treated at Alliance, as Kellum's counsel points out, there is no drug and alcohol abuse diagnosis but Kellum gave the hospital a history of sporadic marijuana use and denied any alcohol abuse. By contrast, when a bed came open for him and he was transferred from Alliance to the state hospital, the records show the role of substance abuse in triggering his commitment. The records note, Kellum is "drinking and doing drugs." A family member reported "When he is drinking and doing drugs, she has to call the law." Kellum reported at EMSH he had been using drugs and alcohol immediately before arriving at Alliance. He was discharged with a diagnosis of alcohol and cannabis disorder and a major depressive disorder. Kellum was counseled extensively on his need to be compliant with his medications and to avoid using alcohol or any illicit drugs.

In late 2017 there was another hospitalization where drug and alcohol abuse were implicated as a precipitating cause. This series of hospitalizations stands in contrast with other times when Kellum's emotional difficulties were more moderated during times he claimed to be abstinent. It also contrasts with other times when Kellum was not in need of hospitalization despite his failure to take his medicines.

### iii. Expert Witness Evidence

The court also has considered the extent to which the two residual functional capacity examinations are supported by expert opinions. The ALJ found that Kellum's anxiety and

12

depression were severe impairments and imposed substantial nonexertional limitations because of his mental health issues. In both RFC assessments, the ALJ found Kellum was limited to performing routine, repetitive work with simple tasks and decisions. This is in keeping with Dr. Whelan's estimation that Kellum had a mild intellectual impairment and Dr. Lane's finding Kellum was mildly to moderately impaired in performing routine, repetitive tasks. The DDS psychologist also found he could perform routine, repetitive work. The ALJ limited Kellum to occasionally interacting with supervisors and co-workers but not the public. This is consistent with the DDS psychologist's finding Kellum could interact appropriately with co-workers and supervisors at a basic level and with Drumheller's notes that he socialized with his girlfriend and helped his son do his homework. Dr. Hardy and Ms. McDonald consistently noted his appropriate and cooperative demeanor. In both RFC assessments, the ALJ found that he could not do production-paced work whether he was abstinent or not.

In the first RFC, the ALJ found that Kellum could not maintain his attention and concentration for two hours at a time; could not behave in an emotionally stable manner; and would have excessive absences. These restrictions are supported by the opinions issued by Dr. Hardy, though the ALJ disagreed with Dr. Hardy's conclusion that sobriety would not lead to any improvement in Kellum's ability to work.

In the second RFC, the ALJ decided that Kellum would be able to maintain his attention and concentration for two hours at a time if abstinent. This is consistent with the multiple treatment notes that Kellum's attention and concentration were average or fair. The ALJ found Kellum could behave in an emotionally appropriate manner throughout the work week if sober. This echoes the DDS psychologist's opinion. Pages of normal and near normal findings in treatment notes and the fact Kellum's hospitalizations coincided with known episodes of drug

13

and alcohol abuse also support the ALJ's decision that Kellum's functioning would improve if sober and medically compliant. These same elements in the record support finding that if sober, Kellum could maintain the necessary regular attendance at work.

The court notes that the opinions of Dr. Hardy and Ms. McDonald support a contrary conclusion. Both treating providers opined that Kellum was unable to work, giving restrictions which would preclude any jobs, and both attributed the restrictions to his mental illness, not substance abuse. The plaintiff accuses the ALJ of playing doctor. The court finds to the contrary -- she was instead fulfilling her responsibility as the finder of fact, weighing conflicting opinions and other evidence before deciding Kellum's substance abuse materially contributed to his disability. *Smith v. Astrue*, 2008 WL 2325637 at *2-3 (5th Cir. 2008). The ALJ explained her reasons for finding McDonald's opinions less than persuasive and for giving limited weight to the opinions of Dr. Hardy. The court finds the explanations adequate. *Newton v. Apfel,* 209 F.3d. 448, 455 (5th Cir. 2000) (An ALJ may reject the opinion of any provider when the "evidence supports a contrary conclusion"). The ALJ also clearly considered and discussed the lay testimony of Kellum and his family in assessing residual functional capacity. Accordingly, the court finds the ALJ properly resolved the conflicts in the opinions of the experts and other evidentiary conflicts.

### 3. CONFLICTING DECISIONS

In the final assignment the plaintiff argues that the current decision by the ALJ is inconsistent with her earlier decision and that the inconsistency is not explained. The plaintiff concedes the earlier decision was vacated and its findings no longer binding. *Muse v. Sullivan*, 925 F. 2d 785, 787, 790 (5th Cir. 1991)(per curiam) (After a case was remanded, the ALJ was no longer bound by another ALJ's finding of the claimant's exertional limits). Kellum argues some

explanation is, nevertheless, due because the same ALJ, while reaching the same ultimate result, used a different rationale. In 2014, the ALJ decided the plaintiff was not disabled based on his mental impairments and that his drug and alcohol problems were not severe. The ALJ re-evaluated the evidence, and perhaps because of the later hospitalizations, found Kellum's drug and alcohol problems were, throughout the entire time, more serious and disabling than she originally assessed. The court cannot find error because the ALJ actually reconsidered the evidence on remand. The court also notes what is critically consistent between the two decisions — the ALJ's conclusion that Kellum's mental impairments were not disabling. In the absence of some authority requiring an ALJ to explain differences between two decisions, this court must be satisfied because the present decision is adequately explained and supported by substantial evidence.

## CONCLUSION

In the end, the decision-making process has been adequately explained and the decision supported by substantial evidence. Accordingly, the decision shall be affirmed and a separate judgment shall be entered.

**THIS**, the ___ day of March, 2021.

/s/ David A. Sanders
**U.S. MAGISTRATE JUDGE**